# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

CATHY A. FOLKERS,

            Claimant,

vs.

ANDREW M. SAUL,
Commissioner of Social Security,[1]
            Defendant.

No. 18-CV-77-LTS

**REPORT AND RECOMMENDATION**

———————————————

Plaintiff Cathy A. Folkers ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Sections 401-34 and for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm the Commissioner's decision in part and reverse and remand the Commissioner's decision in part.**

## I.      BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 13) and only summarize the pertinent facts here. Claimant was born on November 26, 1964. (AR[2] at 316.) Claimant is a high school graduate. (*Id.* at 351.) She allegedly became

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

disabled due to crushed vertebrae, severe depression, disc degeneration, "no cartilage in knees," TMJ, arthritis in her hips and neck, and suspected fibromyalgia.[3] (*Id.* at 350.) Claimant's alleged onset of disability date was February 1, 2009. (*Id.* at 316, 318.) Claimant filed applications for Social Security disability benefits and SSI on September 8, 2014. (*Id.* at 316-23.) Claimant's claims were originally denied on December 12, 2014. (*Id.* at 197-205.) Reconsideration was denied on March 17, 2015. (*Id.* at 212-29.) Claimant filed a Request for Hearing on April 8, 2015. (*Id.* at 231-32.) A video hearing was held on March 16, 2017 with Claimant and her attorney, Phillip Seidl, in Cedar Rapids, Iowa and ALJ Gerald Meyr, vocational expert ("VE") Amy Salva, and hearing reporter Judy Deere in Kansas City, Missouri. (*Id.* at 64-101.) Claimant and the VE testified. (*Id.* at 71-99.)

The ALJ entered an unfavorable decision on June 26, 2017. (*Id.* at 11-26.) On August 25, 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision. (*Id.* at 309-15.) On May 23, 2018, the Appeals Council found there was no basis to review the ALJ's decision. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 30, 2018, Claimant timely filed her complaint in this Court. (Doc. 3.) All briefs were filed by May 30, 2019. On that same date, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[3] In her application materials, Claimant states "fibromyalgia although still awaiting a decision." (AR at 350.)

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996)); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the

impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it.

20 C.F.R. § 416.960(b)(1).  If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.  *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2).  The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy.  *Eichelberger*, 390 F.3d at 591 (citation omitted).

A.    *The ALJ'S Findings*

Before the ALJ began his five-step analysis, he noted that on February 8, 2012, ALJ Jo Ann L. Draper found Claimant not disabled after conducting a hearing on Claimant's previous disability claim.  (AR at 10.)  By alleging a disability onset date prior to February 8, 2012, Claimant was impliedly requesting the ALJ to reopen and revise that decision.  (*Id.* at 10-11.)  The ALJ found no basis upon which to do so.  (*Id.* at 11.)  Therefore, the  ALJ held that the relevant time period for his decision was from February 8, 2012 onward.[4]  (*Id.*)

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since February 1, 2009, the alleged onset date.  (*Id.* at 13.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: "degenerative disk disease of the cervical spine; osteoarthritis of hip and right knee; lumbago; major depressive disorder; adjustment disorder; generalized anxiety

---

[4] In spite of this finding, the ALJ cites medical findings from prior to February 8, 2012 in his decision, as the parties note in the Statement of Facts.  (Doc. 13 at 4.)

disorder; post-traumatic stress disorder; emphysematous changes[5]; basilar subsegmental atelectasis; and reactive airway disease." (*Id.*) (abbreviations omitted). The ALJ also found that Claimant's "goiter, hypothyroidism, temporomandibular joint disorder, tinnitus, Eustachian tube dysfunction, abdominal pain, diverticulitis of sigmoid colon; hypertension; thyromegaly, otitis media, bronchitis, restless leg syndrome, congestive heart failure, and substance abuse disorder" were nonsevere impairments. (*Id.* at 13-14) (abbreviations omitted.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations. (*Id.* at 14.) Specifically, the ALJ considered Claimant's osteoarthritis under listing 1.02 (major dysfunction of a joint(s)); degenerative disc disease under listing 1.04 (disorders of the spine); breathing problems under listing 3.00 (respiratory disorders); and mental impairments under listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive compulsive disorders), 12.08 (personality and impulse control disorders), and 12.15 (trauma- and stressor-related disorders). (*Id.* at 15.)

At step four, the ALJ found that Claimant had the RFC to perform light work with the following non-exertional limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds; can no more than occasionally climb ramps or stairs; can no more than occasionally balance, stoop, or crouch, can never kneel or crawl; can have no repetitive rotation, flexion, or extension of the neck; can no more than occasionally reach overhead bilaterally; must have no exposure to irritants, such as fumes, odors, dusts, or gases; must have no exposure to poorly ventilated areas; must have no exposure to unshielded moving mechanical parts; must have no exposure to unprotected heights; and limited to simple, routine,

---

[5] "Emphysematous" is the adjectival form of "emphysema," which means "1. a pathological accumulation of air in tissues or organs. 2. pulmonary." *Dorland's Illustrated Medical Dictionary* 610 (32d ed. 2012).

and repetitive tasks; in a work environment free of fast-paced production requirements which is defined as constant activity with work tasks

(*Id.* at 17-18.)

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform, including retail marker, electronic sub-assembler, and small parts assembler. (*Id.* at 25.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 26.)

## B.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*,

349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III. DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to fully and fairly develop the record related to the opinion of Claimant's treating psychiatrist and (B) failing to fully and fairly develop the record related to Claimant's physical RFC. Claimant also challenges the validity of the ALJ's decision because she contends ALJ Meyr was not properly appointed under *Lucia v. SEC*, 138 S. Ct. 2044 (2018). (Doc. 14 at 1.)

**A.      *The ALJ did not fully and fairly develop the record related to the opinion of Claimant's treating psychiatrist.***

Claimant argues that the ALJ did not fully and fairly develop the record related to the opinion of her treating psychiatrist, Dr. Roger Safdar, which resulted in the ALJ weighing an incomplete opinion. On May 30, 2011, Dr. Safdar wrote an opinion ("the 2011 opinion") that became part of the record in Claimant's previous Social Security case. (Doc. 14-2.) The decision in that case resulted in the February 8, 2012 ALJ decision that ALJ Meyr held was final and binding and would not be reopened. (AR at 10-11.)

Dr. Safdar also wrote an opinion that became part of the record in the case at bar ("the 2017 opinion"). The relevant portions of the 2017 opinion are reproduced below.

To Whom It May Concern:

I have been following Ms. Folkers for several years, she continues to be impaired by her mental health condition. Her functional condition has, in my opinion declined since *my attached Report of March 30, 2011*. Her conditions presently include [Major Depressive Disorder], Anxiety, and PTSD.

8

> While GAF is no longer considered as a criteria, *most of my March 30, 2011 Report remains true and correct with the following exceptions*:
>
> 1. Lorazepam has been added to her med list;
> 2. She had demonstrated increased inability to keep track, forgetfulness and memory impairment since 2/15/2012;
> 3. She has shown a marked decline in Mental Abilities (*Section I. C, D and E; and Section II. A, B and C*) to be unable to meet competitive standards;
> 4. Her Social Functioning *(C.)* has declined.[6]
>
> She is suffering from a mental disorder which affects her ability to work competitively.

(*Id.* at 1108) (emphasis added). The ALJ gave this opinion partial weight. (*Id.* at 23-24.)

The administrative hearing is a non-adversarial proceeding, and the ALJ has a duty to "fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). Because an ALJ has no interest in denying Social Security benefits, the ALJ must act neutrally in developing the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (opining that "[t]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice") (quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988)) (bracketed information added). The ALJ bears this responsibility "independent of the claimant's burden to press [her] case" and extends to cases where claimants are represents by counsel at the administrative hearing. *Id.*

---

[6] I find the cross-reference to "C" is likely a typographical error because Section "B" of the 2011 opinion addresses social functioning. (Doc. 14-2 at 5.)

Claimant argues that the ALJ decided this case on an incomplete record because the 2011 opinion—which Dr. Safdar calls his "March 30, 2011 Report"—was never made part of the record. (Doc. 14 at 5.) There is no indication as to how that part of the opinion was omitted from the final record in this case. Dr. Safdar clearly thought it was "attached." The Commissioner responds that it was Claimant's burden to prove her disability and Claimant's counsel's responsibility to insure the administrative record was complete. (Doc. 18 at 9.) The Commissioner also asserts that remand is only required when "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." (*Id.* at 7) (quoting 42 U.S.C. § 405(g)). The Commissioner further argue that "it must be reasonably likely the evidence would have changed the Commissioner's decision." (*Id.*) (citing *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997)).

I find the Commissioner's first argument to be meritless. When there was insufficient evidence in the record upon which to make a decision, the ALJ was under an obligation to insure the record was complete, even though Claimant was represented by counsel. *See Stroman v. Berryhill*, No. 17-cv-4049-LRR, 2018 WL 2171474, at *7 (N.D. Iowa April 24, 2018) (citing *Snead* and dismissing the same argument by the Commissioner related to claimant testimony). One of the reasons the ALJ gave Dr. Safdar's opinion only partial weight is that the opinion was "not consistent with the examination and opinions of Dr. Mraz, [the examining consulting psychiatrist in this case], who provided a much more detail [sic] explanation of the claimant's examination and basis for his opinions." (AR at 24.)

The ALJ should not have relied on that reason to give partial weight to the only opinion of a treating psychiatrist in the case while giving great weight to all other medical opinions in the record, including the opinions of reviewing non-examining psychiatrists. (*Id.* at 22-23.) An ALJ, of course, is entitled to do this, if he finds other opinions better

supported by the record as a whole. 20 C.F.R. § 404.1527(c)(2)(3). However, this rule assumes the ALJ is working with a complete record. The ALJ in the case at bar was not. Dr. Safdar's opinion was obviously not complete. To the contrary, the 2017 opinion should have been seven pages long, but was missing the six pages incorporating the 2011 opinion. (AR at 1108; Doc. 14-2.) Dr. Safdar's entire 2017 opinion is premised on having the six pages of the 2011 opinion "attached." (AR at 1108.) In the 2011 opinion, Dr. Safdar stated that Claimant's "[r]esponse to treatment has been minimal" and that Claimant's psychiatric condition exacerbates her experience of pain or other physical symptoms by lowering her tolerance to pain. (Doc. 14-2 at 1, 4.) Dr. Safdar also stated that Claimant's prognosis was only "fair to poor." (*Id.* at 1.) Dr. Safdar did not amend those comments; he intended for the ALJ to read them, along with the rest of his 2011 opinion, when the ALJ decided his patient's case. (AR at 1108.) Accordingly, I find the Commissioner's first argument to be without merit. The ALJ knew that Dr. Safdar, a treating physician, whose special status the ALJ recognized in his decision[7] (*Id.* at 23-24), intended for the 2017 opinion to be read only as one part of a longer opinion that included the 2011 opinion. Therefore, the ALJ had an obligation to insure the record was complete by obtaining the 2011 opinion or asking Claimant's counsel to do so.

Regarding the Commissioner's second argument,

[42 U.S.C.] Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings. Remand is appropriate only upon a showing by the claimant "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To be considered material, the new evidence must be "non-cumulative, relevant, and probative of the

---

[7] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, Claimant's claim was filed on September 8, 2014. Thus, the old regulations apply. *See id.*

> claimant's condition for the time period for which benefits were denied."
> Furthermore, it must be reasonably likely that the Commissioner's
> consideration of this new evidence would have resulted in an award of
> benefits.

*Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (internal case citations omitted).

I have already concluded that the Commissioner's arguments related to Claimant's lack

of good cause for incorporating the 2011 opinion into the record earlier are without merit.

Neither party cites a case with similar facts, and my independent research has not

turned up any. Many cases are similar to *Jones* in that the evidence the claimant sought

to admit was immaterial because it was not related to the relevant time period. *Id.*

(additional medical report dated eight months after Appeals Council adopted ALJ's

decision as final decision of the Commissioner); *Hepp v. Astrue*, 511 F.3d 798, 808 (8th

Cir. 2008) (MRI report dated four years after last date of coverage not probative of

condition during relevant time period). Cases also include those wherein the

Commissioner's consideration of the proffered new evidence would not have resulted in

an award of benefits. *See, e.g.*, *Davis v. Berryhill*, No. 17-CV-80-LRR, 2018 WL

3600056, at *7 (N.D. Iowa July 27, 2018), *R. & R. adopted sub nom. Davis v. Comm'r

of Soc. Sec.*, 2018 WL 4300505 (N.D. Iowa Sept. 10, 2018); *Wheeler v. Berryhill*, No.

17-CV-4038-LTS, 2018 WL 3091624, at *9 (N.D. Iowa Jan. 11, 2018), *R. & R.

adopted*, 2018 WL 2266514 (N.D. Iowa May 17, 2018).

I find that the 2011 opinion is "relevant, and probative of the claimant's condition

for the time period for which benefits were denied." That the opinion is dated prior to

February 9, 2012 means nothing because Dr. Safdar stated in 2017 that "most of [the

2011 opinion] remains true and correct with [certain] exceptions" that he enumerated.

(AR at 1108.)

Furthermore, Dr. Safdar referred to "my attached" 2011 opinion. Thus, he

incorporated the 2011 opinion by reference, regardless of its original date. For this

reason, alone, the 2011 opinion is relevant. Without the 2011 opinion, the 2017 opinion was incomplete.

The 2011 opinion is probative of Claimant's condition during the relevant time period because it was written by Claimant's treating psychiatrist and because it contains most of Dr. Safdar's complete 2017 opinion. The record contains no other opinion from a treating counselor, social worker, or other mental health professional who had regular contact with Claimant during the relevant time period. Thus, Dr. Safdar's opinion provided the only available longitudinal picture of Claimant's mental health. *See* 20 C.F.R. 404.1527. Whether the ALJ ultimately decided to credit that opinion with more than partial weight was his decision, but the record was incomplete without the 2011 opinion.

The Commissioner argues that the 2011 opinion would not have changed the ALJ's opinion because "[e]ven without [the 2011 opinion], the ALJ was able to evaluate Dr. Safdar's [2017 opinion] that [Claimant's] mental condition had generally declined since March 2011. . . . Indeed, the ALJ observed that Dr. Safdar's treatment notes did not reflect notations of or support for a significant decline in [Claimant's] mental abilities as assessed in [the 2017 opinion]" because Dr. Safdar's 2017 opinion was not supported by his treatment notes or objective testing. (Doc. 18 at 8-9.) The Commissioner also relies on treatment notes wherein Dr. Safdar found that Claimant was "alert and oriented, her speech was logical, her behavior was appropriate, her memory and cognition were intact, her psychomotor activity was normal, her thought processes were fairly well organized, and her insight and judgment were described as fair or good." (*Id.* at 9-10.)

However, the Commissioner fails to cite Dr. Safdar's later treatment notes documenting Claimant's declining mental health. In March 2016, Claimant was "dealing with a lot of stress" and "anxiety problems" for which she went to Mercy Urgent Care. (*Id.* at 991.) At Mercy, she was prescribed Lorazepam, which helped, but Claimant was

still anxious, depressed, and not sleeping well when she saw Dr. Safdar. (*Id.*) Claimant was "having a tough time dealing with [some] situation." (*Id.*) Dr. Safdar's assessment was that Claimant was "[n]ot doing very well." (*Id.*) He continued Claimant on Lorazepam. (*Id.*) By July 2017, Claimant was admitted to the psychiatric unit of the hospital via the trauma center for suicidal thoughts. (*Id.* at 1118.) Dr. Safdar saw Claimant in the hospital near the end of her stay and found she was still "subdued [and] depressed-looking." (*Id.* at 1119.) Although Claimant did not have any hallucinations, paranoia, or delusional thinking, she had energy, motivation, and concentration problems and reported that she was not "coping or functioning well." (*Id.*) Dr. Safdar prescribed involvement in hospital unit programming, maintained her "on precautions," and started her back on medications, which she said did help. (*Id.*)

In February 2017, one month before the hearing, Claimant reported to Dr. Safdar that in spite of taking her medication, she "still gets pretty anxious, depressed and tearful at times." (*Id.* at 1099.) Dr. Safdar noted that Claimant "was getting tearful easily" and reported to him that her memory had not been good, that she was forgetful, had not been able to keep track of her appointments at the Abbe Center, and was not coping or functioning well. (*Id.*) Claimant was under additional stress because her mother had one month to live, was not eating well, and was "somewhat withdrawn and disheveled." (*Id.*) Dr. Safdar's assessment was that Claimant was "[n]ot doing very well" and he continued her on her medications and advised she consider therapy. (*Id.*) Claimant began therapy the next month. (*Id.* at 1104-06.) By March 2017, Claimant was "still going through some ups and downs," although "medication was helping some." (*Id.* at 1102.) Claimant's memory was only fair and she was easily forgetful. (*Id.*) Claimant's mood was "a bit depressed" and she was "not doing a whole lot." (*Id.*) Although Dr. Safdar discussed "other strategies" with Claimant, he continued her on her current medications and assessed her as doing "fair." (*Id.*)

14

The Commissioner argues that "Dr. Safdar's treatment notes after 2011 reflected only some mood and affect abnormalities, and he observed that plaintiff was alert and oriented, her speech was logical, her behavior was appropriate, her memory and cognition were intact, her psychomotor activity was normal, her thought processes were fairly well organized, and her insight and judgment were described as fair or good. (Doc. 18 at 10-11) (citing AR at 450, 452, 454, 991). The first three treatment notes the Commissioner cites are from August 2012, January 2013, and January 2014. These notes do not show the decline in Claimant's mental health in the final two years documented in the record. Moreover, AR 454, which was cited by the Commissioner, states that Claimant "has not been doing well," is "[f]eeling depressed and getting tearful easy, and that Claimant's "speech is logical, *but* mood is depressed" does not support the Commissioner's argument when read in its entirety. (emphasis added). Likewise, AR 991, also cited by the Commissioner, does not support his argument. The March 7, 2016 treatment note found at AR 991 states that Claimant was "having a lot of anxiety problems," not sleeping well, and "having a tough time" dealing with some situation. Dr. Safdar's assessment on that date was that Claimant was "[n]ot doing very well." (*Id.*)

I find remand is necessary for the ALJ to consider the entire 2017 opinion, which includes the 2011 opinion. First, the 2011 opinion is necessary to fully understand the 2017 opinion and was incorporated by reference. Second, I find it likely that inclusion of the 2011 opinion would have changed the ALJ's decision. The 2011 opinion included Dr. Safdar's narrative comments, some of which appear to have come to fruition since he wrote them. For example, Dr. Safdar opined in 2011 that Claimant's prognosis was fair to poor (Doc. 14-2 at 1), and his most recent records document the downward trajectory of Claimant's mental health. Dr. Safdar also opined that Claimant only experienced "minimal response to treatment" (*Id.*) as evidenced by her setback while

15

compliant with her medications. Third, although the majority of the 2011 opinion consists of a check-box form, which is not usually helpful to the court, *see Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018), there is support in Dr. Safdar's treatment notes and Claimant's testimony for the opinions in the check-box portion of the opinion. (AR at 80, 90-91, 991, 993-95, 1099, 1102.)

The Commissioner further argues that remand would be futile because Dr. Safdar's treatment notes demonstrate that Claimant sought intermittent treatment, used conservative treatments, and that medications helped when she was compliant. This is not necessarily true. The February 2017 decline in Claimant's mental health occurred when she was compliant with her medication. (*Id.* at 1099.) Moreover, the improvement in Claimant's symptoms in March 2017 is no indication that she will continue to enjoy good mental health because Claimant does not have a record of continuously good symptom control and because mental health symptoms wax and wane over time. S*ee Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016); *Knepper v. Astrue*, No. 11-CV-4034-DEO, 2012 WL 4470773, at *9 (N.D. Iowa Sept. 27, 2012) ("It is a truism that mental disorders wax and wane in time.").

Finally, the Commissioner argues that Dr. Safdar's opinion is inconsistent with Dr. Mraz's opinion and mental status examinations and therefore remand is not necessary. On the contrary, I find that this is another reason that remand is necessary. Without considering Dr. Safdar's entire opinion, including the narrative comments Dr. Safdar wrote to accompany his check-box opinion, the ALJ was left guessing as to what the "Sections" cross-referenced in the 2017 opinion contained. (AR 1108.) Thus, the ALJ's statement that Dr. Safdar's opinion was not consistent with Dr. Mraz's opinion was made based on incomplete information and conjecture. Moreover, Dr. Mraz's evaluation was completed on November 25, 2014 and his opinion was written on November 30, 2014. (*Id.* at 535-37.) Dr. Mraz's opinion was made without the benefit

of Claimant's most recent psychological history and it is therefore logical that his opinion and Dr. Safdar's opinion might be different.

I further find that while the 2011 opinion is not "new" evidence, it is in unique category of evidence not contemplated by any case proffered by either party: evidence that is necessary to complete the record and evidence that Dr. Safdar assumed was in the record when he wrote his 2017 opinion. When the 2017 opinion says things like "my attached [2011 opinion]," and refers to the 2011 opinion multiple times, I find that justice requires the case be remanded for the 2011 opinion to be made part of the record so that the ALJ can consider the entire opinion of Dr. Safdar. *See Sabljakovic v. Colvin*, No. 16-CV-2010-EJM, 2016 WL 4154845, at *2 (N.D. Iowa Aug. 5, 2016) (remanding case for consideration of new evidence because "justice require[d]" it).

Accordingly, I recommend the District Court reverse the ALJ's decision on this issue and order that Dr. Safdar's 2011 opinion be added to the record. I further recommend that the District Court remand the case for new hearing to re-weigh the evidence and, if necessary, craft a new RFC and receive the testimony of a vocational expert.

## B.    *The ALJ sufficiently developed the record concerning Claimant's physical RFC.*

Claimant takes issue with the ALJ's decision as it relates to her pulmonary impairments. Specifically, Claimant argues that the ALJ "played doctor" when he addressed Claimant's pulmonary limitations, beginning with his acknowledgment of "moderately severe emphysematous changes during a CT scan on November 27, 2015." (Doc. 14 at 7.) The "emphysematous changes" were part of the impressions noted from that CT scan. Dr. Jarrod A. Yates's impressions were that there was "No acute osseous[8] finding. . . . 1. Moderately severe emphysematous changes. 2. No pulmonary nodules

---

[8] Osseous is "of the nature or quality of bone; bony." *Dorland's*, *supra* note 5, at 1343.

or masses. 3. Mild basilar subsegmental atelectasis,[9] otherwise clear lungs." (*Id.* at 1005.) Claimant was referred for that CT because an "incidental finding on a chest x-ray show[ed] a nodule that need[ed] to be evaluated by CT." (*Id.* at 980.)

Claimant asserts that "[t]he ALJ recognized that the CT scan looked like serious findings and diagnosed [Claimant] with the severe impairment of 'emphysematous changes' in the hearing decision and then sought to determine how that impairment would impact Ms. Folkers' ability to work—without the aid of any medical opinions." (Doc. 14 at 7.) Claimant argues that "[i]f the ALJ thought [Claimant's] 'emphysematous changes' warranted a severe impairment finding, the ALJ should have followed through by obtaining some medical opinion evidence explaining how those emphysematous changes could be expected to impact [her] ability to work, preferably in the context of a treating or examining provider relationship." (*Id.* at 7-8.) Claimant avers that because "the ALJ played doctor and drew his own inferences from the objective findings, uninformed by an acceptable medical source opinion concerning [her] physical limitations, the ALJ's denial of benefits was not supported by substantial evidence." (*Id.* at 8.)

In relevant part, the RFC crafted by the ALJ included the following limitations: Claimant is limited to "light work with the following non-exertional limitations: the claimant can never climb ladders, ropes, or scaffolds; can no more than occasionally climb ramps or stairs . . .; must have no exposure to irritants, such as fumes, odors, dusts, or gases; [and] must have no exposure to poorly ventilated areas." (*Id.* at 17.)

"Because claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the

---

[9] Subsegmental is "involving less than a segment." *Id.* at 1792. Atelectasis is "incomplete expansion of . . . a portion of a lung. 2. Airlessness or collapse of a lung that had once been expanded." *Id.* at 171.

workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Meyers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). I find that the ALJ's assessment of Claimant's physical RFC in this case was supported by medical evidence.

The record contains no opinion from a treating or consulting examining physician regarding Claimant's physical condition. This comes as no surprise because, as the ALJ noted,

> the medical evidence of record reflects that during the relevant period[,] the claimant's treatment for her alleged physical impairments was intermittent and episodic with the claimant jumping between various complaints without a coherent escalating pattern of treatment, supportive objective testing, or supportive diagnostic imaging. The claimant's treatment for physical symptoms during the relevant period was actually infrequent for the severe physical impairments and were [sic] primarily for episodic acute abdominal pain or other complaints.

(AR at 19.) Consequently, the only physicians to proffer opinions about Claimant's physical limitations were Marlene Anne Gernes, D.O. and Laura Griffith, D.O., who both reviewed the record for the state agency ("the state agency physicians"). (*Id.* at 126-29, 144-47.)

On November 12, 2014, Dr. Gernes issued an opinion finding Claimant capable of light work, which included being able to occasionally climb ladders, ropes, scaffolds, ramps, and stairs and included no limitations on Claimant's exposure to fumes, odors, dusts, gases, and poor ventilation. (*Id.* at 126-29.) Dr. Griffith confirmed Dr. Gernes' opinion when she reviewed the record on appeal. (*Id.* at 144-47.) In so doing, Dr. Griffith noted that Claimant alleged on appeal only that "her insomnia is worse, burning

in legs and neck sore" and that there was no evidence she had sought medical treatment for these conditions. (*Id.* at 147) (citing an August 2014 treatment note).

Neither of the state agency physicians limited Claimant based on pulmonary issues. There are good reasons for this. The first is the most telling: when Claimant applied for disability benefits and SSI, she did not mention pulmonary issues as one of her disabling conditions, in spite of being diagnosed with "chronic lung disease" in December 2008. (*Id.* at 350, 629.) Likewise, Claimant never mentioned pulmonary issues or breathing issues in her Function Report—Adult or Personal Pain/Fatigue Questionnaire. (*Id.* at 361-71.) In these two documents, Claimant attributes her physical limitations to musculoskeletal problems and pain in her hips, back, and legs. (*Id.*) In addition, as noted, there is scant evidence in the record documenting any one specific physical impairment. (*Id.* at 23.) Moreover, except for the November 27, 2015 CT exam that yielded the only mention of emphysematous changes in the record, Claimant never sought medical treatment solely for pulmonary issues. Second, as Dr. Griffith noted, the assumedly then-most-recent treatment note in the record documented "normal breathing." (*Id.* at 149) (citing an August 2014 treatment note). Even after receiving her CT results, Claimant never reported lung problems or breathing difficulties to her physicians. Claimant's lungs were merely checked by her physicians as part of examinations focusing on other complaints.[10]

---

[10] Claimant apparently continues to smoke. (AR at 478, 529, 893.) However, most of the treatment notes in the record do not indicate that the healthcare provider inquired about Claimant's smoking status. Oddly, except for a 2012 treatment note that mentions Claimant's request for a Chantix prescription to replace an expired prescription she had never filled, no healthcare provider seems to have encouraged Claimant to quit smoking. It is well-known that smoking is a major risk factor for diseases that cause shortness of breath. Am. Cancer Soc., https://www.lung.org/lung-health-and-diseases/lung-disease-lookup/shortness-of breath/ shortness-breath-symptoms-risks.html

An ALJ is only required to support his RFC with evidence of "some medical evidence," not any specific medical evidence. "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (internal brackets omitted) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). In addition, "[i]n evaluating all evidence of record, the ALJ may rely on the opinions of state agency consultants." *Vega v. Colvin*, 128 F. Supp. 3d 1121, 1130 (N.D. Iowa 2015) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014); *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014)). *See also Joseph P. v. Berryhill*, No. 18-CV-291 (ECT/LIB), 2019 WL 3948861, at *13 (D. Minn. May 13, 2019) (affirming ALJ's decision to assign great weight to state agency psychological consultant's opinion because ALJ did not rely on consultant opinion "as the sole evidence for reaching his RFC determination") (citing *Turpin v. Colvin*, 750 F.3d 989 994–95 (8th Cir. 2014)).

A remand for further development of the record is only required when Claimant was prejudiced or treated unfairly by the ALJ's development of the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir.1988)). Claimant bears the burden to establish she was prejudiced or treated unfairly by the ALJ's failure to develop the record. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (declining to remand a case when the claimant presented "no evidence suggesting that [remand to develop the evidence sought by the claimant] would have yielded" the results the claimant hoped for when evidence before the court did not even hint such evidence existed).

The ALJ gave the state agency physicians' opinions great weight because the opinions were "generally consistent with the medical record of evidence as a whole," including evidence discussed in the preceding pages of the ALJ's decision, Claimant's

"intermittent and infrequent pattern of treatment, physical examinations, and diagnostic imaging." (AR at 23.) In relevant part, the ALJ incorporated portions of the state agency physicians' limitations into his final RFC. Specifically, the ALJ limited Claimant to light work and to occasionally climbing ramps or stairs. (*Id.*) However, the ALJ limited Claimant's ability further than the state agency physicians in two areas. Claimant's RFC limits Claimant to never climbing ladders, ropes, or scaffolds and to never being exposed to fumes, odors, dusts, gases, and poor ventilation. (*Id.* at 17-18.) The ALJ further limited the RFC in these ways because he found these limitations were "consistent with the objective medical evidence." (*Id.* at 18.) The ALJ also found these limitations consistent with Claimant's activities of daily living. (*Id.* at 22.)

Although Claimant testified that she left her last employment, at least in part, due to breathing difficulties (*Id.* at 73), Claimant did not specify shortness of breath or breathing difficulties as issues when applying for disability benefits and SSI. (*Id.* at 350.) Claimant has never presented to a healthcare professional for breathing difficulties or health problems related to her lungs, such as pneumonia, bronchitis, or chronic obstructive pulmonary disease ("COPD"). In spite of being a smoker (*e.g., id.* at 477), the results of Claimant's lung/respiratory system examinations have been normal with "normal effort and breath sounds," no wheezes, rales[11], shortness of breath, or respiratory distress. (*Id.* at 478, 492, 513, 514, 528, 529, 892, 894, 1002, 1113.) The only treatment note that mentions anything different is from November 10, 2015 and states that Claimant's lungs were "clear except for a few fine basilar rales consistent with smoking." (*Id.* at 1008.)

Even the November 27, 2015 CT scan impressions contain positive results. (*Id.* at 1005) ("No acute osseous finding. . . . No pulmonary nodules or masses. . . . Mild

---

[11] Rale is "a discontinuous sound . . . consisting of a series of short nonmusical noises, heard primarily during inhalation; called also *crackle*." *Dorland's, supra* note 5, at 1576.

basilar subsegmental atelectasis, otherwise clear lungs."). After conducting a thorough review of the record, I have found no contradictory medical evidence in the files. Thus, substantial medical evidence in the record supports the ALJ's RFC.

Furthermore, Claimant's self-reported daily activities also support the RFC. As discussed above, Claimant never reported any breathing limitations in her Function Report—Adult. The limitations to daily activities Claimant reports are related to her musculoskeletal impairments and the pain they cause. In addition, Claimant is able to do light housework, mow the grass with a self-propelled lawn mower, shop in stores weekly or biweekly, do her own laundry, drive, and help care for her elderly ill mother. (*Id.* at 363-65.) Claimant bakes and sews and is hoping to get paid for some of her custom sewing. (*Id.* at 78-81.) While Claimant testified that she gets winded going up stairs and walking more than a block at a time (*Id.* at 85), the ALJ accounted for this in the RFC by limiting Claimant to light work and to only occasionally climbing ramps or stairs.

To the extent Claimant avers that "the ALJ played doctor and drew his own inferences from the objective findings, uninformed by an acceptable medical source opinion" (Doc. 14 at 8), I find this argument without merit. Contrary to Claimant's argument that the ALJ played doctor, the ALJ merely stated that "the objective medical evidence does not support the claimant's subjective allegations regarding the effects of [her] impairments on her functioning and do not support limitations beyond those determined in the residual functional capacity." (AR at 20.) This sentence appears at the end of a paragraph wherein the ALJ discussed whether diagnostic imaging, including the CT scan, supported Claimant's allegations. (*Id.*) The ALJ had just discussed Claimant's intermittent and sporadic treatment for her physical impairments (*Id.* at 19) and then considered whether the objective imaging in the record supported Claimant's claims. The ALJ was not playing doctor. He was thoughtfully weighing the evidence. In this instance, he concluded the evidence came up short of supporting a finding of

disability. (*Id.* at 20.) The ALJ did not "diagnose" Claimant and did not assume what limitations Claimant's pulmonary issues provided, instead incorporating limitations in concert with Claimant's credible physical limitations that were supported by the record.

To the extent Claimant is arguing that the ALJ erred by finding "emphysematous changes" to be a severe impairment when no treating physician opined as to what effect these changes would have on Claimant's RFC, I find that argument without merit for the reasons already discussed. Although no physician wrote an opinion, the treatment notes in the record documenting normal lung capacity and no breathing difficulties certainly do not warrant an RFC that is more limited than the one crafted by the ALJ. The treatment notes cover a period of several years and they are consistent, which gave the ALJ a good picture of Claimant's alleged pulmonary and breathing problems. Furthermore, I find that the ALJ gave the Claimant all the benefit of the doubt when interpreting the evidence in this case, especially when considering the dearth of evidence to support Claimant's allegations of breathing problems. The ALJ stated that he "gave Claimant's allegations as much weight as could be supported by the evidence of record regarding her physical limitations" (*Id.* at 24) and I agree that he did. Thus, contrary to Claimant's allegations, the ALJ merely weighed the evidence and decided against Claimant. This is exactly what he was supposed to do. *See Keehn v. Halter*, No. C00-3064-MWB, 2002 WL 31039628, at *24 (N.D. Iowa Mar. 23, 2002) ("The ALJ may 'weigh evidence and make judgments as to what evidence is most persuasive.'") (quoting *Stephens v. Heckler,* 766 F.2d 284, 287-88 (7th Cir. 1985)).

Finally, Claimant has not told the Court what further limitations are warranted by her pulmonary issues. (*Id.*) The only evidence in the record of any limitations related to pulmonary issues is Claimant's testimony. I have already found that the ALJ accounted for limitations from Claimant's testimony in his RFC. It is notable that Claimant has not made a separate argument related to her RFC or the jobs the ALJ chose to include in his

decision as examples of appropriate jobs for Claimant. During the hearing, the ALJ provided the VE hypotheticals based on a person who could engage in light work with additional limitations and a person who could do sedentary work with additional limitations. (AR at 94-99.) The VE provided examples of three jobs in each category (*Id.* at 95-97) and the ALJ chose to adopt the light work RFC and the light work jobs into his decision. (*Id.* at 17, 25.) Claimant does not argue that the ALJ made an incorrect choice by rejecting a sedentary RFC or failing to include limitations in the RFC that her attorney proffered in hypotheticals during the hearing. I will not further speculate on how Claimant suspects another physician could help develop the record in a case wherein Claimant, herself, has stated that her pulmonary issues cause her problems only with walking and climbing stairs. Claimant has failed to demonstrate that she was prejudiced by the ALJ's decision on this issue and has failed to convince me that evidence was missing from the record before the ALJ as the time of the hearing.

I find that the record before the ALJ was sufficiently developed for the ALJ to make a decision and that the decision the ALJ made on this issue was supported by substantial evidence in the record as a whole. Specifically, the ALJ's decision was supported by treatment notes documenting normal lung function and lack of treatment for lung and breathing problems, the opinions of the state agency physicians, evidence of Claimant's activities of daily living, and Claimant's hearing testimony. *See Joseph P.*, 2009 WL 3948861, at *13 (affirming decision of the ALJ because he relied on a variety evidence in the record, including the opinions of state agency consultants). I therefore recommend the District Court affirm the ALJ's decision on this issue.

**C.      *Claimant failed to timely raise her Appointments Clause argument under Lucia v. SEC.***

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments

Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that Social Security Administration ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. Claimant asserts this Court should vacate the denial of benefits by ALJ Meyr and remand the case for decision by what she contends is a properly-appointed ALJ. Claimant admits that she is asserting her Appointments Clause challenge for the first time in her opening brief to this Court.

Claimant does not argue that her case presents any factual or procedural differences from other cases that have previously been addressed by this Court. Indeed, this case has the same procedural posture as several other cases wherein this Court already addressed this issue (i.e., all administrative proceedings, including denial by the Appeals Council, were completed before *Lucia* was decided on June 21, 2018). Rather, Claimant asserts that her case can be distinguished because many of the cases decided in this District were decided before EM-18003 was issued by the SSA and before former Acting Commissioner Berryhill's authority lapsed, which led the SSA to "lack a Department Head that could provide a remedy for an Appointments Clause challenge." (Doc. 14 at 8.)

For support, Claimant cites SSR 19-1p, 2019 WL 1202036, Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* on Cases Pending at the Appeals Council. However, SSR 19-1p is inapplicable to Claimant's case because the ruling only applies to challenges timely raised before the Appeals Council or previously raised at the ALJ level. 2019 WL 1202036, at \*9583; *see also Murphy v. Comm'r of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896, at \*7 (N.D. Iowa April 10, 2019) (addressing SSR 19-1p and holding that claimant waived *Lucia* issue when she raised it for the first time in the district court).

Claimant also cites *Bizarre v. Berryhill*, 364 F. Supp. 3d. 418 (M.D. Pa. 2019) for support and encourages the Court to adopt that court's reasoning in this case.[12] The *Bizarre* court held that it did "not believe that [the claimant] was required to raise his [Appointments Clause challenge] before the ALJ or Appeals Council in the first instance or that failure to do so worked a forfeiture of that claim." *Id.* at 425. I respectfully disagree and decline to adopt the *Bizarre* court's holding. Instead, I agree with the holding in *Murphy*: "[T]he court respectfully disagrees with the *Bizarre* court's holding. This court believes that failure to raise an Appointments Clause challenge before the ALJ or Appeals Council at the agency level waives the issue on judicial review at the district court level." 2019 WL 2373896, at *7 (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003)).

This Court has ruled in favor of the Commissioner on similar claims on several occasions. *Id.* at **7-8; *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have

---

[12] Claimant also cites the following cases, which held the same way as *Bizarre* held: *Ready v. Berryhill*, No. 18-04289, 2019 WL1934874 (E.D. Pa. April 30, 2019); *Culclasure v. Comm'r of SSA*, No. 18-cv-1543, 2019 WL 1641192 (E.D. Pa. April 16, 2019); *Bradshaw v. Berryhill*, ___ F. Supp. 3d ___, 2019 WL 1510953 (E.D.N.C. March 26, 2019); *Probst v. Berryhill*, No. 5:18-cv-130-JG, 2019 WL 1749135 (E.D.N.C. March 22, 2019).

forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent]. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).

In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id*. In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.

Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

Finally, although Claimant argues that raising the issue during the administrative process would have been futile because Social Security EM-1003[13] prevented the ALJ from addressing the issue, nothing stopped Claimant from raising the issue during the administrative prosses and preserving it for appeal. In addition, Claimant's argument that former Acting Commissioner Berryhill's authority lapsed between November 2017 and April 2018, leaving no one at the SSA with the "power to correct the Appointments Clause issue . . . [when her] claim was pending with the Appeals Council" (Doc. 14 at

---

[13] EM-1003 was issued on January 30, 2018, and stated, "Because the SSA lacks the authority to finally decide constitutional issues such as these, ALJs will not discuss or make any findings related to the Appointments Clause issue on the record." It did not prevent claimants from making such challenges and, by its very existence, anticipated that claimants would make them.

14, n.9), is unavailing for the same reason. Nothing prevented Claimant from raising this issue in her appeal to the Appeals Council and preserving it for appeal to this Court.

Thus, if the District Court does not remand the case for further development of the record, I recommend the Court affirm the ALJ's decision on this issue.

However, if the District Court remands the case for further development of the record, I recommend the District Court permit Claimant to assert this argument on remand. *See Weatherman v. Berryhill*, No. 5:18-CV-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018); *Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018); *Clayton C. v. Comm'r of Soc. Sec.*, No. C18-638 BHS-BAT, 2018 WL 5985255, at *4 (W.D. Wash. Oct. 16, 2018), *R. & R. adopted sub nom, Christianson v. Berryhill*, 2018 WL 5962899 (Nov. 14, 2018).

Relying on *Mann*, this Court has noted, "[O]n remand, a claimant may challenge an ALJ's appointment because Appointments Clause challenges are deemed to be in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Anderson v. Comm'r of Soc. Sec.*, No. 18-CV-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019) (internal quotations omitted); *Dyslin v. Comm'r of Soc. Sec.*, No. 18-CV-0014-LTS, 2019 WL 2219004, at *14 (N.D. Iowa Feb. 22, 2019), *R. & R. adopted*, No. C18-14-LTS, 2019 WL 1331742 (N.D. Iowa Mar. 25, 2019).

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ in part and reverse and remand the decision of the ALJ in part:**

1. The Court should **reverse** the ALJ's decision related to the 2011 opinion of Dr. Safdar and **order that Dr. Safdar's 2011 opinion be added to the record.**

- The Court should **remand the case for a new hearing** to re-weigh the evidence and, if necessary, craft a new RFC and receive the testimony of a vocational expert.
2. The Court should **affirm** the ALJ's decision related to Claimant's physical RFC.
3. The Court should **affirm** the ALJ's decision on Claimant's Appointments Clause Challenge.
   - However, if the Court reverses and remands the case for Dr. Safdar's 2011 opinion to be added to the record, Claimant should be allowed to assert her Appointments Clause challenge on remand.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 30th day of August, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa