# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

CATHY A. FOLKERS,

              Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,[1]

              Defendant.

No.  C18-77-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Mark A. Roberts, United States Magistrate Judge.  *See* Doc. No. 21.  Judge Roberts recommends that I affirm in part and reverse and remand in part the decision by the Commissioner of Social Security (the Commissioner) denying Cathy A. Folkers' applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq.  The Commissioner and Folkers filed timely objections.  *See* Doc. Nos. 22, 23.  The background is set forth in the R&R and is repeated herein only to the extent necessary.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

2

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.    *Review of Report and Recommendation***

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").

As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.   THE R&R

Folkers applied for DIB and SSI on September 8, 2014, alleging disability beginning February 1, 2009, due to crushed vertebrae, severe depression, disc degeneration, "no cartilage in knees," TMJ, arthritis in her hips and neck and suspected fibromyalgia. Doc. No. 21 at 2 (citing AR 316, 318, 350). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Folkers was not disabled as defined in the Act. Folkers argues the ALJ erred by failing to fully and fairly develop the record related to the opinion of her treating psychiatrist and her physical RFC. *Id*. at 8 (citing Doc. No. 14 at 1). She also challenges the validity of the ALJ's decision because she contends the ALJ was not properly appointed under *Lucia v. SEC*, 138 S. Ct. 2044 (2018). *Id*. Judge Roberts addressed each argument separately.

With regard to Folkers' treating psychiatrist, Dr. Roger Safdar, Folkers argues the ALJ weighed an incomplete opinion. Dr. Safdar wrote an opinion dated May 30, 2011 (the 2011 opinion) that was part of Folkers' previous Social Security case. Doc.

No. 21 at 8 (citing Doc. No. 14-2).  Dr. Safdar wrote another opinion for this case (the 2017 opinion).  It provides in relevant part:

> To Whom It May Concern:
>
> I have been following Ms. Folkers for several years, she continues to be impaired by her mental health condition.  Her functional condition has, in my opinion declined since *my attached Report of March 30, 2011*.  Her conditions presently include [Major Depressive Disorder], Anxiety, and PTSD.
>
> While GAF is no longer considered as a criteria, *most of my March 30 2011 Report remains true and correct with the following exceptions*:
>
> 1. Lorazepam has been added to her med list;
> 2. She had demonstrated increased ability to keep track, forgetfulness and memory impairment since 2/15/2012;
> 3. She has shown a marked decline in Mental Abilities (*Section I. C, D and E; and Section II. A, B and C*) to be unable to meet competitive standards;
> 4. Her Social Functioning (*C.*) has declined.[2]
>
> She is suffering from a mental disorder which affects her ability to work competitively.

AR 1108 (emphasis added).  The ALJ gave this opinion partial weight.  *Id.* at 23-24.

Folkers argues the ALJ made his decision based on an incomplete record because the 2011 opinion from Dr. Safdar was never made a part of the record.  Doc. No. 21 at 10 (citing Doc. No. 14 at 5).  The Commissioner argues that it is the claimant's burden to prove her disability and ensure the administrative record is complete.  *Id.* (citing Doc. No. 18 at 9).  The Commissioner also argues that remand is only required when "there is new evidence which is material and that there is good cause for the failure to

---

[2] Judge Roberts noted that the cross-reference to "C" was likely a typographical error because Section "B" of the 2011 opinion addresses social functioning.  Doc. No. 21 at 9, n.6 (citing Doc. No. 14-2 at 5).

incorporate such evidence into the record in a prior proceeding." *Id.* (quoting Doc. No. 18 at 7). Moreover, he contends it must be reasonably likely that the evidence would have changed the ALJ's decision. *Id.*

Judge Roberts disagreed that the onus is entirely on the claimant to ensure the record is complete, particularly when there is insufficient evidence for the ALJ to make a decision. *Id.* (citing *Stroman v. Berryhill*, No. 17-cv-4049-LRR, 2018 WL 2171474, at *7 (N.D. Iowa April 24, 2018)). He noted that one of the reasons the ALJ gave Dr. Safdar's opinion only partial weight is that the opinion was "not consistent with the examination and opinions of Dr. Mraz, [the examining consulting psychiatrist in this case], who provided a much more detail [sic] explanation of the claimant's examination and basis for his opinions." *Id.* (quoting AR 24). Judge Roberts reasoned this was not a good reason for discounting Dr. Safdar's opinion because it assumes the ALJ was working with a complete record. *Id.* at 10-11. Dr. Safdar's 2017 opinion was premised on his 2011 opinion, which he believed was attached. *Id.* (citing AR 1108). The 2011 opinion, submitted by Folkers as an exhibit (Doc. No. 14-2), is six pages long. Dr. Safdar stated that Folkers' "[r]esponse to treatment has been minimal" and that her psychiatric condition exacerbates her experience of pain or other physical symptoms by lowering her tolerance to pain. *Id.* at 11 (citing Doc. No. 14-2 at 1, 4). He also found her prognosis was "fair to poor." *Id.* (citing Doc. No. 14-2 at 1). Judge Roberts noted that Dr. Safdar did not amend these comments in his 2017 opinion, but rather intended for the ALJ to read them along with the rest of his 2011 opinion. Moreover, Judge Roberts reasoned that the ALJ knew that Dr. Safdar (a treating physician whose opinion is typically entitled to some deference under the applicable regulations) intended for his 2017 opinion to be read in conjunction with the 2011 opinion. Therefore, the ALJ was on notice and had an obligation to ensure the record was complete by obtaining the 2011 opinion. *Id.*

With regard to the Commissioner's second argument, Judge Roberts found there was good cause for incorporating the 2011 opinion into the record. *Id.* at 12. He

distinguished this case from others in which claimants attempted to admit new evidence into the record that was immaterial and not related to the relevant time period or would not have resulted in an award of benefits. *Id.* (citing cases). Judge Roberts found the 2011 opinion was relevant and probative of Folkers' condition during the time period for which benefits were denied because Dr. Safdar stated in his 2017 opinion that "most of [the 2011 opinion] remains true and correct with [certain] exceptions," which Dr. Safdar listed. *Id.* (citing AR 1108). Dr. Safdar also referred to the "attached" 2011 opinion indicating he was incorporating it by reference and intended it be considered in conjunction with his 2017 opinion. Thus, Judge Roberts concluded that without the 2011 opinion, the 2017 opinion was incomplete. *Id.* at 13. Judge Roberts also reasoned that the opinion was probative of Folkers' condition during the relevant time period because the administrative record contains no other opinion from a mental health professional who had regular contact with Folkers during the relevant time period. Therefore, Dr. Safdar's opinion provided the only available longitudinal picture of Folkers' mental health. *Id.* at 13.

With regard to whether the opinion would have changed the ALJ's decision, the Commissioner argues the ALJ was able to adequately evaluate Dr. Safdar's 2017 opinion that Folkers' mental condition had generally declined since March 2011 because the ALJ observed that the treatment notes did not reflect a significant decline and Dr. Safdar's 2017 opinion was not supported by treatment notes or objective testing. *Id.* (citing Doc. No. 18 at 8-9). Judge Roberts noted the Commissioner failed to acknowledge Dr. Safdar's later treatment notes in which he documented Folkers' declining mental health. For instance, a March 2016 treatment note indicates Folkers was "dealing with a lot of stress" and "anxiety problems" for which she went to urgent care. *Id.* (citing AR 991). Folkers was prescribed Lorazepam, which helped, but she was still anxious, depressed and not sleeping well when she saw Dr. Safdar. He noted she was "having a tough time dealing with [some] situation." *Id.* He concluded she was "[n]ot doing very well" and continued her Lorazepam prescription. *Id.* at 14. Judge Roberts discussed further

treatment notes, observing that by July 2017, Folkers was admitted to the psychiatric unit of the hospital via the trauma center for suicidal thoughts. *Id.* (citing AR 1118). Dr. Safdar saw her near the end of her stay and found she was "subdued [and] depressed-looking." *Id.* (citing AR 1119). She had problems with energy, motivation and concentration and was not "coping or functioning well." *Id.*

One month before the hearing in February 2017, Folkers reported to Dr. Safdar that despite taking her medication she "still gets pretty anxious, depressed and tearful at times." *Id.* (citing AR 1099). Dr. Safdar noted she "was getting tearful easily" and reported her memory was suffering, she was forgetful, had been unable to keep track of her appointments and was not coping or functioning well. *Id.* She was facing additional stress because her mother had one month to live, she was not eating well and appeared "somewhat withdrawn and disheveled." *Id.* Dr. Safdar's assessment was that she was "[n]ot doing very well" and continued her medications and advised her to consider therapy, which Folkers began the following month. *Id.* (citing AR 1104-06). By March 2017, she was still experiencing ups and downs, but her medication was helping "some." *Id.* (citing AR 1102). Her memory was described as fair and she was still easily forgetful. Her mood was "a bit depressed" and she was "not doing a whole lot." *Id.* Dr. Safdar assessed her condition as "fair," continued her medications and discussed other strategies with Folkers. *Id.*

Judge Roberts then considered treatment notes cited by the Commissioner from August 2012, January 2013 and January 2014, which reflected some mood and affect abnormalities, but intact memory and cognition, appropriate behavior, logical speech, normal psychomotor activity, organized thought processes and fair or good insight and judgment. *Id.* at 15 (citing AR 450, 452, 454, 991). Judge Roberts observed these notes did not show the decline in Folkers' mental health in the final two years documented in the record. *Id.* Moreover, one of the notes cited by the Commissioner indicated that Folkers "ha[d] not been doing well," was "[f]eeling depressed and getting tearful easy" and that her speech was logical, but her mood was depressed. *Id.* (citing AR 454). Judge

Roberts reasoned that that note did not support the Commissioner's characterization of Folkers' condition when read in its entirety. *Id.* Similarly, a note from March 7, 2016, cited by the Commissioner indicated that Folkers was "having a lot of anxiety problems," not sleeping well and having a tough time dealing with some situation. Dr. Safdar's assessment on that date was that Folkers was "[n]ot doing very well." *Id.* (citing AR 991).

Judge Roberts concluded that remand was appropriate for the ALJ to consider the entire 2017 opinion, including the incorporated 2011 opinion. He reasoned:

> First, the 2011 opinion is necessary to fully understand the 2017 opinion and was incorporated by reference. Second, I find it likely that inclusion of the 2011 opinion would have changed the ALJ's decision. The 2011 opinion included Dr. Safdar's narrative comments, some of which appear to have come to fruition since he wrote them. For example, Dr. Safdar opined in 2011 that Claimant's prognosis was fair to poor (Doc. No. 14-2 at 1), and his most recent records document the downward trajectory of Claimant's mental health. Dr. Safdar also opined that Claimant only experienced "minimal response to treatment" (*Id.*) as evidenced by her setback while compliant with her medications. Third, although the majority of the 2011 opinion consists of a check-box form, which is not usually helpful to the court, *see Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018), there is support in Dr. Safdar's treatment notes and Claimant's testimony for the opinions in the check-box portion of the opinion. (AR at 80, 90-91, 991, 993-95, 1099, 1102).

*Id.* at 15-16. Judge Roberts disagreed that remand would be futile for the reasons cited by the Commissioner – that Dr. Safdar's treatment notes demonstrated intermittent and conservative treatment and success with medications when Folkers was compliant. *Id.* at 16. He noted the February 2017 decline in Folkers' mental health occurred when she was compliant with her medication. *Id.* (citing AR 1099). The improvement in her symptoms in March 2017 also provided no indication that she would continue to enjoy good mental health given her record of not having continuously good symptom control and because mental health symptoms typically wax and wane over time. *Id.* (citing *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir 2016)). He also disagreed with the

Commissioner's argument that remand was not necessary because Dr. Safdar's opinion was inconsistent with Dr. Mraz's opinion and mental status examinations. *Id.* While the ALJ found Dr. Safdar's opinion was not consistent with Dr. Mraz's opinion, this was based on incomplete information and conjecture without considering Dr. Safdar's entire opinion as intended. *Id.* Moreover, Judge Roberts observed that Dr. Mraz's evaluation was completed on November 25, 2014, and his opinion was dated November 30, 2014. *Id.* (citing AR 535-37). Thus, Dr. Mraz's opinion did not take into account Folkers' most recent psychological history. *Id.* at 17.

Finally, Judge Roberts found the 2011 opinion was not "new" evidence subject to the typical standards such evidence must meet to be considered on remand. He noted that it was evidence necessary to complete the record and evidence that the treating psychiatrist assumed was in the record when he wrote his 2017 opinion. *Id.* Indeed, the 2017 opinion references the 2011 opinion multiple times. As such, he found that justice requires the case be remanded for the ALJ to consider the entire opinion of Dr. Safdar. *Id.* (citing *Sabljakovic v. Colvin*, No. 16-CV-2010-EJM, 2016 WL 4154845, at *2 (N.D. Iowa Aug. 5, 2016)).

Judge Roberts recommends I reverse the ALJ's decision on this issue and order that Dr. Safdar's 2011 opinion be added to the record. He further recommends I remand the case for a new hearing for the ALJ to reweigh the evidence and, if necessary, craft a new RFC and receive the testimony of a vocational expert. *Id.*

Next, Judge Roberts addressed Folkers' argument concerning whether the ALJ sufficiently developed the record regarding her pulmonary impairments. *Id.* Folkers alleges the ALJ made an inappropriate medical judgment by failing to obtain medical opinion evidence related to Folkers' "emphysematous changes." *Id.* at 17-18 (citing Doc. No. 14 at 7). The ALJ recognized Folkers' "emphysematous changes" as a severe impairment based on a CT scan and the RFC included the following physical limitations: "light work with the following non-exertional limitations: the claimant can never climb ladders, ropes, or scaffolds; can no more than occasionally climb ramps or stairs . . . ;

must have no exposure to irritants, such as fumes, odors, dusts, or gases; [and] must have no exposure to poorly ventilated areas." *Id.* at 18 (citing AR 17).

Judge Roberts noted that a claimant's RFC is a "medical question" and an ALJ's assessment of it must be supported "by some medical evidence of the claimant's ability to function in the workplace." *Id.* at 18-19 (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted)). He also noted the law does not require an RFC finding "be supported by a specific medical opinion." *Id.* at 19.

Judge Roberts explained that the record contains no opinion from a treating or consulting examining physician regarding Folkers' physical condition. The only opinions come from the non-examining state agency consultants, who did not find any limitations related to Folkers' alleged pulmonary impairment. *Id.* (citing AR 126-29, 144-47). The ALJ noted:

> the medical evidence of record reflects that during the relevant period[,] the claimant's treatment for her alleged physical impairments was intermittent and episodic with the claimant jumping between various complaints without a coherent escalating pattern of treatment, supportive objective testing, or supportive diagnostic imaging. The claimant's treatment for physical symptoms during the relevant period was actually infrequent for the severe physical impairments and were [sic] primarily for episodic acute abdominal pain or other complaints.

*Id.* (quoting AR 19).

In addressing Folkers' arguments related to her alleged pulmonary issues, Judge Roberts noted that Folkers did not initially allege such an impairment when she applied for DIB and SSI, even though she had been diagnosed with "chronic lung disease" in December 2008. *Id.* at 20 (citing AR 350, 629). Folkers also never mentioned pulmonary or breathing issues in her function report. *Id.* (citing AR 3611-71). In these documents, Folkers attributed her physical limitations to musculoskeletal problems and pain in her hips, back and legs. The only mention of emphysematous changes in the record comes from a November 27, 2015 CT exam. It does not appear Folkers sought treatment solely for pulmonary issues and as one of the state agency consultants noted,

an August 2014 treatment note documented "normal breathing." *Id.* (citing AR 149). Even after the CT results, Folkers did not report lung problems or breathing difficulties to her physicians and her lungs were checked by providers as part of examinations focused on other complaints. *Id.* Judge Roberts noted that Folkers does smoke, but there was little mention of this in her treatment notes. *Id.* at n.10.

Judge Roberts observed the ALJ gave the state agency physicians' opinions great weight. He incorporated the recommended limitations of light work and occasional climbing of ramps or stairs. *Id.* at 22 (citing AR 23). However, he added further limitations of never climbing ladders, ropes or scaffolds and never being exposed to fumes, odors, dusts, gases and poor ventilation finding these additional limitations were "consistent with the objective medical evidence and Folkers' activities of daily living." *Id.* (citing AR 18, 22). Folkers testified she left her last employment, in part, due to breathing difficulties. Other than this testimony and the November 27, 2015, CT scan and Folkers' history as a smoker, there are no other documents addressing breathing problems in the record. Judge Roberts concluded the ALJ essentially gave Folkers the benefit of the doubt in including pulmonary limitations in the RFC given the dearth of evidence to support her allegations of breathing problems. *Id.*

Moreover, Folkers never identified what additional limitations she believes were warranted related to her pulmonary issues. *Id.* at 24. The ALJ accounted for the limitations she identified during her testimony in the RFC and the ALJ included such limitations in the hypothetical questions to the VE. *Id.* at 25 (citing AR 94-99). Because the record did not indicate any breathing issues beyond those discussed above, Judge Roberts concluded the record was fully developed as to this issue and the ALJ's decision not to include additional limitations was supported by substantial evidence in the record as a whole (including some medical evidence). *Id.* at 23-34. He noted treatment notes demonstrated normal lung function and lack of treatment for lung and breathing problems. Moreover, the ALJ considered the opinions of the state agency physicians,

Folkers' daily activities and her hearing testimony. He recommends I affirm the ALJ's decision on this issue.

Finally, Judge Roberts addressed Folkers' Appointments Clause challenge under *Lucia*. He noted that Folkers raised this issue for the first time in this court and does not argue her case presents any factual or procedural differences from other cases raising this issue that I have previously addressed. *See id.* at 27 (citing cases). He explained that in previous cases I have held that a claimant forfeits an Appointments Clause challenge by failing to raise it during administrative proceedings. *Id.* (citing *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept. 14, 2018)). While Folkers argues that raising the issue before the ALJ or at any point in the administrative proceeding would have been futile, Judge Roberts found that nothing prevented Folkers from raising the issue and preserving it for appeal. *Id.* at 28. Judge Roberts recommends that if I remand the case for further development of the record concerning Dr. Safdar's 2011 opinion, I should permit Folkers to assert this argument on remand. *Id.* at 29 (citing cases).

## IV. DISCUSSION

Both the Commissioner and Folkers raise objections to the R&R. *See* Doc. Nos. 22, 23. The Commissioner argues the ALJ fully developed the record related to Dr. Safdar's opinion. *See* Doc. No. 22 at 2 (objecting to pages 8 through 17 of the R&R). Folkers argues the ALJ did not sufficiently develop the record concerning her pulmonary impairment, which the ALJ found severe. *See* Doc. No. 23 at 2-3. She also objects to the R&R's recommendation that, in the event I do not find remand is appropriate, I should find that Folkers forfeited the Appointments Clause challenge by failing to raise it during the administrative proceedings. *Id.* at 3. Alternatively, she requests that I stay entering judgment in her case until the Eighth Circuit addresses this issue, noting that three cases from this district has been consolidated on appeal and will address a similar Appointments Clause challenge. She agrees with the recommendation that she be allowed to assert this

challenge if the case is remanded. *Id.* at 3. I will address the Commissioner's objection first, followed by Folkers' objections.

## A. *Development of the Record Concerning Dr. Safdar's 2011 Opinion*

The Commissioner argues Dr. Safdar's 2011 opinion was not new, as it was created three years before Folkers filed for benefits. Doc. No. 22 at 2. He argues Folkers has not shown good cause, nor provided any explanation for why she waited until the briefing in this case to submit the 2011 opinion. *Id.* The Commissioner also contends the 2011 opinion was not material because it would not have changed the ALJ's determination that Dr. Safdar's 2017 opinion was entitled to partial weight. *Id.* The Commissioner argues that even without the 2011 opinion, the ALJ had sufficient evidence to determine that the record did not reflect a significant decline in mental abilities as stated in Dr. Safdar's 2017 opinion. *Id.* at 3.

The Commissioner notes that Dr. Safdar's treatment notes after 2011 were relatively unremarkable. *Id.* (citing Doc. No. 18 at 9-11). While the Commissioner acknowledges Judge Roberts' observation that some of the cited treatment notes do not support this contention, he notes that on one occasion, Folkers' symptoms appeared to be related to the fact that she had run out of her medications. *Id.* (citing AR 454). On other occasions, Judge Roberts referred to Folkers' subjective reports that were documented in the treatment note, but Dr. Safdar's actual examination revealed she was alert and oriented, had good eye contact, organized thought processes and fair insight and judgment. *Id.* at 3-4 (citing AR 991). The Commissioner argues these objective findings undermine Dr. Safdar's 2017 opinion that Folkers' mental abilities markedly declined after 2011. The Commissioner asserts that later treatment notes reveal the same. *Id.* at 4. With regard to her July 2016 admission to the psychiatric unit, a review of those notes shows that she reported suicidal thoughts after an argument with her son and because she was not able to help pay bills and support her sons. *Id.* (citing AR 1121-28). He cites *Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) for the proposition that

14

situational stressors are not disabling. *See also* Doc. No. 22 at 5 (citing AR 1099 as another situational stressor in which Folkers reported that her mother was dying). Moreover, records reveal that when Folkers took her medication regularly she reported feeling better and that the medication was helping but admitted she had been taking her medication only sporadically. *Id.* at 4-5 (citing AR 1118-19, 11122). Overall, the Commissioner argues that the objective examinations from Folkers' treatment notes are inconsistent with Dr. Safdar's opinion that her mental condition had markedly declined since March 2011. *Id.* at 5-6. The Commissioner adds that Dr. Safdar's opinion is further undermined by the extent of his treatment, which the Commissioner characterizes as infrequent, intermittent and conservative.

The Commissioner further argues that a February 2017 treatment note showing a decline in Folkers' mental health was insufficient to undermine her overall improvement with treatment after 2011. *Id.* at 6. The Commissioner cites a March 2017 note in which Folkers indicated her medication was "helping some" and Dr. Safdar assessed she was "doing fair." *Id.* (citing AR 1102). A therapy consultation a few weeks later indicated Folkers was taking her medications and had normal affect and speech, good eye contact, appropriate and goal-oriented thought content and there was no evidence of flight of ideas, loose associations or delusions. *Id.* (citing AR 1105). The Commissioner argues that contrary to Judge Roberts' analysis, Dr. Safdar's 2011 comment that Folkers' prognosis was fair to poor and she had only a minimal response to treatment did not come to fruition by March 2017, when Dr. Safdar issued his 2017 opinion. While the Commissioner acknowledges that mental health symptoms can wax and wane, he contends the record shows that after 2011, Folkers' medication was helpful in controlling her symptoms when she was compliant.

Finally, the Commissioner asserts that the ALJ properly found Dr. Safdar's 2017 opinion was inconsistent with the November 2014 opinion of Dr. Mraz. *Id.* at 7. Dr. Mraz assessed moderate problems with working memory, but opined that Folkers was able to remember and carry out simple instructions at a reasonable pace and denied

problems getting along with supervisors, co-workers or the public. *Id.* (citing AR 537). The Commissioner argues the 2011 opinion was unnecessary because Dr. Mraz's opinion undermines the 2017 opinion that Folkers' social functioning had declined since 2011 and her general mental abilities had declined since 2011 such that she was unable to meet competitive standards. He argues it is irrelevant that Dr. Mraz did not review Folkers' treatment notes after his November 2014 evaluation because those treatment notes documented situational stressors, contained largely unremarkable examination findings and demonstrated improvement with treatment. *Id.* at 7-8. In other words, Folkers' more recent treatment notes would not have changed Dr. Mraz's opinion.

The Commissioner makes several good arguments, but many of his arguments miss the larger point, which is that the ALJ made his decision based on an incomplete record. An ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). A social security hearing is a non-adversarial proceeding, and the ALJ must develop the record so that "deserving claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). Reversal due to failure to develop the record is warranted where such failure is unfair or prejudicial. *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

The missing evidence in this case is an opinion from a long-standing treating physician, which is the most heavily weighted evidence in an administrative record absent any of the applicable exceptions. *See House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) ("A treating physician's opinion is given controlling weight 'if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'"). While the Commissioner's arguments may ultimately carry the day as to why Dr. Safdar's 2011 opinion does not change the outcome of this case, these arguments are best left to be considered by the ALJ on remand, on a full and complete record. To hold otherwise would undermine the administrative and judicial review process. *See Valdez v. Astrue*, Case No. 1:12-cv-177 WDS, 2013 WL

12333984 (D.N.M. Mar. 13, 2013) (concluding the ALJ committed legal error by failing to obtain evidence that the record disclosed was missing and that it would be inappropriate for the court to consider the evidence in the first instance for harmless error purposes or otherwise) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)); *Bernice H. v. Berryhill*, No. 3:17-cv-00957-HZ, 2018 WL 3862303, at *4 (D. Or. Aug. 14, 2018) (noting "ALJ's duty is triggered where it is clear medical records are missing or additional medical records are referenced but not included in the administrative record" and citing cases); *Monaghan v. Astrue*, Civil Action No. 07-cv-23655-WYD, 2009 WL 1973513, at * 9 (D. Colo. July 8, 2009) (noting that ALJ could not rely on one treatment note to conclude claimant's headaches had improved when that note made it clear that claimant had seen the provider multiple times and all other treatment notes were missing from the record).

I agree with Judge Roberts that the 2011 opinion does not constitute "new" evidence given that it was intended to be included in the record in the proceedings below. Indeed, the 2017 opinion largely relies on the 2011 opinion, except to note a few areas in which Folkers' condition has worsened. AR 1108. It is concerning that the ALJ did not follow up to ensure the 2011 opinion was in the record, given that Dr. Safdar explicitly referenced it twice in his 2017 opinion. Thus, I find it unnecessary to evaluate this opinion under the standards that apply to new evidence.

I also agree with Judge Roberts that the 2011 opinion was necessary to fully understand the 2017 opinion. *See* Doc. No. 21 at 15-16. While the treatment notes themselves may be read multiple ways, as demonstrated by the Commissioner's arguments and Judge Roberts' analysis, I find that fairness requires the ALJ to weigh these treatment notes (and all of the other evidence in the record) against the full medical opinion to determine its proper weight.

For these reasons, the Commissioner's objection is overruled.

**B.** **Development of the Record Related to Folkers' Pulmonary Impairments**

Folkers objects to the R&R's recommendation to affirm this aspect of the ALJ's decision. *See* Doc. No. 23 at 2-3. She argues that because the ALJ found her "emphysematous changes" to be a severe impairment, the ALJ should have obtained a medical opinion as to how that impairment impacts Folkers' ability to work. *Id.* She points out the state agency medical consultants did not evaluate how this impairment impacted her ability to work and there are no treating or examining source opinions to shed any light on this issue. She contends the ALJ's RFC determination must be based on some medical opinion evidence concerning how a claimant's severe impairments impact the claimant's ability to work and without such evidence in the record, the ALJ made an inappropriate medical judgment. *Id.*

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A severe impairment is one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b); 416.922(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted).

Here, the ALJ identified "emphysematous changes"[3] as a severe impairment and included the following physical limitations in the RFC: "light work," "can never climb ladders, ropes, or scaffolds; can no more than occasionally climb ramps or stairs . . . must have no exposure to irritants, such as fumes, odors, dusts, or gases; [and] must have no exposure to poorly ventilated areas." AR 17. The ALJ made the following observations regarding Folkers' complaints of breathing difficulties and the medical evidence in the record:

- "the medical evidence of record reflects that during the relevant period the claimant's treatment for her alleged physical impairments was intermittent and episodic with the claimant jumping between various complaints without a coherent escalating pattern of treatment, supportive objective testing, or supportive diagnostic imaging." AR 19.

- "Even after being diagnosed [with degenerative disc disease] in September 2011, the claimant primary care provider noted that he did not find any signs of concern on her physical examination and recommended she quit smoking while staying active with moderate exercise." *Id.*

- "The claimant's treatment for back pain, joint pain, and breathing problems after February 2012 was minimal and consisted primarily of visits to a primary care provider in only December 2012, May 2013, and August 2013. *Id.*

- "The claimant's subsequent treatment does not reflect recurrent complaints or treatment for respiratory, back pain, or joint pain. Additionally, the claimant's treatment notes during these unrelated visits do not support the claimant's allegations. For example, the claimant was seen by a primary care provider for acute ear pain in October 2015 but had no noted musculoskeletal or neurological deficits and it was specifically noted the claimant['s] neck was supple with a normal range of motion and her lungs were mostly clear." *Id.*

---

[3] Emphysematous means "relating to or affected with emphysema." *See Stedmans Medical Dictionary* 287370 (2014). Emphysema is a lung condition that manifests as breathlessness on exertion. *Id.* at 287050.

The ALJ cited exhibits in support of each of these findings and also noted that Folkers' daily activities also did not support her allegations of disabling limitations. *Id.* at 21-22. He concluded:

> Although the objective medical evidence supporting the claimant's allegations was not fully supportive and the claimant's subjective complaints were not entirely consistent with the evidence of record, the undersigned has given the claimant's allegations as much weight as could be supported by the evidence of record regarding her physical limitations and have [sic] limited the claimant to work at the light exertional level. The claimant's physical impairments combine to limit her ability to climb, balance, stoop, kneel, crouch, crawl, move her neck, reach overhead, and work in certain environments.

*Id.* at 24.

"The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Id.* An ALJ "is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007). *See Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (concluding the ALJ's RFC determination was supported by substantial evidence despite the fact that the ALJ discredited the treating physician's opinion because it was based on the medical records, the claimant's statements and other evidence in the record).

As Judge Roberts noted, neither of the state agency consultants limited Folkers based on pulmonary issues and there is no medical opinion in the record identifying any limitations related to environment or breathing issues. Doc. No. 21 at 20. This, however, does not mean the ALJ's RFC is not supported by "some medical evidence."

The November 27, 2015, CT scan includes an impression of "[m]oderately severe emphysematous changes." AR 1005. Medical records before and after this scan, however, reveal few breathing complaints by Folkers, normal examinations related to pulmonary function and recommendations to quit smoking and exercise. *See* AR 418 (noting complaints of difficulty breathing but examination showed no respiratory distress, normal breath sounds and no rales, rhonchi or wheezes); AR 421 (chest x-ray performed on September 15, 2011 in response to complaints of shortness of breath with normal findings); AR 434 (noting claimant smokes one to two packs per day, "no respiratory distress," [b]reath sounds normal"); AR 492 (treatment note dated August 22, 2014 documented normal breath and effort in objective findings); AR 529 (treatment note dated September 7, 2014 noting "[n]egative for apnea and shortness of breath" in objective findings); AR 620-24, 628-35 (treatment notes dated December 2008 in which Folkers complained of chest pain with deep breathing and was given Motrin, told to stop smoking, and given a monitor to wear for 24 hours, which came back with normal findings).

The record as a whole confirms that Folkers has a lung condition but does not support limitations related to this condition to the extent alleged by Folkers. While the objective medical evidence demonstrates she has "emphysematous changes," this condition does not manifest itself to the extent that Folkers has sought treatment or that her providers notice any respiratory concerns when performing physical examinations related to other complaints. The lack of evidence to support Folkers' complaints does not require the ALJ to obtain additional medical evidence, such as a consultative examination. *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.") (internal quotations omitted)); *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (concluding there

was substantial evidence in the record to allow the ALJ to make an informed decision based on numerous medical reports from treating physicians, consulting physicians and psychologists spanning a six-year period, as well medical tests performed by claimant's physicians, disability reports, supplemental disability outlines and questionnaires completed by the claimant).  The greatest support for limitations related to this impairment come from Folkers' subjective complaints, which the ALJ largely discredited.  Folkers does not challenge this aspect of the ALJ's decision.  However, the ALJ did credit Folkers' respiratory complaints as he included limitations of common irritants in the RFC.  *See* AR 17 (light work; can never climb ladders, ropes or scaffolds; can no more than occasionally climb ramps or stairs; must have no exposure to irritants such as fumes, odors, dusts or gases and must have no exposure to poorly ventilated areas).  Because the ALJ included greater limitations in the RFC than the medical evidence would appear to support, and therefore, is a more favorable RFC to Folkers, I find no error with this aspect of the decision and disagree it provides a basis to order greater development of the record.  This objection is overruled.

### C.    *Appointments Clause Challenge*

Folkers also argues the ALJ's decision should be vacated and this case remanded because the ALJ was an inferior officer who was not appointed in compliance with the Appointments Clause.[4]  Doc. No. 23 at 3-10.  Folkers did not raise this argument to the ALJ, nor the Appeals Council, but argues that it is timely because there is no issue exhaustion requirement for nonadversarial disability hearings and even if there was, the constitutional claims exception and the futility exception apply.  *Id*. at 4.  In the

---

[4] Providing that principal officers must be appointed by the President with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . the Courts of Law, or  . . . the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.

alternative, Folkers argues that I should exercise discretionary review authority pursuant to *Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991). *Id.*

Folkers' challenge is based on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In that case, the Court held that ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause as they "exercise[] significant authority pursuant to the law of the United States." *Lucia*, 138 S. Ct. at 2051. The Court found that Lucia was entitled to a new administrative hearing in front of a properly-appointed ALJ noting that he had raised a "timely challenge" before the administrative agency. *Id.* at 2055. While Lucia did not raise his Appointment Clause challenge to the ALJ, he did raise it in his appeal to the SEC. *Id.* at 2050.

Folkers acknowledges I have previously addressed this issue and held that Social Security "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings." *Stearns v. Berryhill*, No. 17-2031, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018). *See also Thomas v. Saul*, No. C18-2038-LTS, 2019 WL 4246691, at *9 (N.D. Iowa Sept. 6, 2019); *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 19, 2019). I have previously encountered many of the arguments Folkers makes in her objection and do not find them persuasive. *See Thomas*, 2019 WL 4246691, at *9.

I decline to vacate the ALJ's decision on this basis and find that because Folkers did not raise an Appointments Clause issue before or during the ALJ's hearing or before the ALJ's decision became final, she has forfeited the issue for consideration on judicial review. However, because I find the case should be remanded for the ALJ to consider Dr. Safdar's entire 2017 opinion (including the 2011 opinion), I agree with Judge Roberts that the Commissioner will have the opportunity to select the appropriate ALJ to review this issue and Folkers may raise any Appointments Clause challenge she may have at that time. *See* Doc. No. 21 at 29 (citing *Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018); *Dyslin v. Comm'r of Soc. Sec.*, No. 18-CV-

0014-LTS, 2019 WL 2219004 at *14 (N.D. Iowa Feb. 22, 2019); *Anderson v. Comm'r of Soc. Sec.*, No. 18-cv-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019)).

## V.    CONCLUSION

For the reasons set forth herein:

1.    The Commissioner's objections (Doc. No. 22) to the Report and Recommendation (Doc. No. 21) are **overruled**.

2.    Folkers' objections (Doc. No. 23) to the Report and Recommendation (Doc. No. 21) are **overruled**.

2.    I **accept** Judge Roberts' Report and Recommendation (Doc. No. 21) without modification. *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Roberts' recommendation:

    a.    the Commissioner's determination that Folkers was not disabled is **affirmed in part and reversed in part** and this matter is **remanded** to the Commissioner for further proceedings as described by Judge Roberts.

    b.    Judgment shall enter in favor of Folkers and against the Commissioner.

    c.    If Folkers wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 27th day of September, 2019.

_____
Leonard T. Strand, Chief Judge